Joseph Lavi, Esq. (State Bar No. 209776)
jlavi@lelawfirm.com
Jordan D. Bello, Esq. (State Bar No. 243190)
jbello@lelawfirm.com
Vincent Granberry, Esq. (State Bar No. 276483)
**LAVI & EBRAHIMIAN, LLP**
8889 W. Olympic Blvd., Suite 200
Beverly Hills, California 90211
Telephone: (310) 432-0000
Facsimile: (310) 432-0001

Sahag Majarian II, Esq. (State Bar No. 146621)
sahagii@aol.com
**Law Offices of Sahag Majarian II**
18250 Ventura Boulevard
Tarzana, California 91356
Telephone: (818) 609-0807
Facsimile: (818) 609-0892

Attorneys for PLAINTIFF
CAROLINA LEOS on behalf of herself and others
similarly situated.

# SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA LEOS on behalf of herself and others similarly situated.<br><br>    PLAINTIFF,<br><br>vs.<br><br>ZALE DELAWARE, INC., a Delaware corporation; and DOES 1 to 100, Inclusive.<br><br>    DEFENDANTS. | Case No.: 2:19-CV-00829-TLN-AC<br><br>**CLASS ACTION**<br><br>**PLAINTIFF CAROLINA LEOS'S FIRST AMENDED COMPLAINT FOR DAMAGES AND RESTITUTION FOR:**<br><br>1.  **FAILURE TO PROVIDE OVERTIME WAGES AT THE LEGALLY REQUIRED RATE IN VIOLATION OF LABOR CODE SECTIONS 510, 1194, AND WAGE ORDERS**<br><br>2.  **FAILURE TO PROVIDE MEAL BREAK AND REST BREAK PREMIUMS AT THE LEGALLY REQUIRED RATE IN VIOLATION OF LABOR CODE SECTIONS 226.7, 512, AND WAGE ORDERS**<br><br>3.  **FAILURE TO PROVIDE MINIMUM WAGE OR OVERTIME PAY FOR ALL HOURS WORKED IN VIOLATION OF LABOR CODE** |

SECTIONS 510, 1194, 1198 AND THE WAGE ORDERS

4. **FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE SECTION 226**

5. **FAILURE TO TIMELY PAY UNPAID WAGES DUE AT TIME OF SEPARATION OF EMPLOYMENT IN VIOLATION OF LABOR CODE SECTIONS 201, 202, AND 203**

6. **UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq.***

**DEMAND FOR JURY TRIAL**

**NOW COMES** Plaintiff CAROLINA LEOS ("Plaintiff"), who alleges and complains against defendants ZALE DELAWARE, INC., and DOES 1 to 50, inclusive, (hereinafter, collectively referred to as "Defendants" or "DEFENDANTS"), and DOES 51 to 100 as follows:

## I. <u>INTRODUCTION</u>

1.    This is a wage and hour class action lawsuit on behalf of Plaintiff and other current and former non-exempt employees of DEFENDANTS in California seeking within the applicable statute of limitations periods (taking into account any tolling, if applicable): unpaid overtime wages based on Defendants incorrectly calculating overtime pay; unpaid meal premium wages and/or rest premium wages for incorrectly calculated meal period premium wages; unpaid minimum wage, liquidated damages, or overtime wages, if applicable when employees worked overtime, based on Defendants' failure to pay employees wages for all hours worked; statutory penalties for failure to provide accurate and complete wage statements; waiting time penalties in the form of continuation wages for failure to timely pay former employees all earned and unpaid wages; applicable civil penalties following notice to the Labor and Workforce Development Agency; other equitable relief, reasonable attorney's fees pursuant to Labor Code sections 226(e), 1194, costs, and interest, if applicable, brought on behalf of Plaintiff and others similarly situated.

## II.    JURISDICTION AND VENUE

2.    This Court has jurisdiction over Plaintiff and the Class Members' claims because Plaintiff's lawsuit seeks damages, and restitution for herself and the class in excess of $25,000, Defendant ZALE DELAWARE, INC. is a Delaware citizen, and DEFENDANTS employed class members and injuries occurred in locations in California including in Sacramento County at 2701 Ming Avenue, Bakersfield, California 93304.

## III.    PARTIES

3.    Plaintiff brings this action on behalf of herself and other members of the general public similarly-situated. The named Plaintiff and the class of persons on whose behalf this action is filed are current, former and/or future employees of DEFENDANTS who worked, work, or will work for DEFENDANTS as non-exempt hourly employees in California. Plaintiff worked for DEFENDANTS as an hourly non-exempt employee selling jewelry in DEFENDANTS' retail stores in California from approximately 2001 to May 23, 2018, when DEFENDANTS terminated her employment. At all times mentioned herein, the currently named Plaintiff is and was domiciled and a resident and citizen of California and was employed by DEFENDANTS in a non-exempt position within the 4 years prior to the filing of the complaint.

4.    Plaintiff is informed and believes and thereon alleges that Defendant ZALE DELAWARE, INC. is a foreign entity incorporated in Delaware, is authorized to do business within the State of California, and is doing business in the State of California and/or that Defendants DOES 51-100 are, and at all times relevant hereto were persons acting on behalf of ZALE DELAWARE, INC. who violated or caused to be violated provisions of the Labor Code and/or the Industrial Welfare Commission's wage orders regulating hours and days of work. Plaintiff is informed and believes and thereon alleges that ZALE DELAWARE, INC. was Plaintiff's employer and suffered and permitted Plaintiff and similarly situated non-exempt employees to work and exercised control over the wages, hours and working conditions of employment of Plaintiff and similarly situated non-exempt employees.

5.    Plaintiff is informed and believes and thereon alleges that Defendants DOES 1 through 50 are corporations, or are other business entities or organizations of a nature unknown to Plaintiff

that employed PLAINTIFF and the similarly situated California non-exempt employees, permitted Plaintiff and similarly situated non-exempt employees to work, and exercised control over the wages, hours and working conditions of employment of Plaintiff and similarly situated non-exempt employees.

6.    Plaintiff is informed and believes and thereon alleges that Defendants DOES 51 through 100 are individuals unknown to Plaintiff. Each of the individual defendants is sued individually and in his or her capacity as an agent, shareholder, owner, representative, manager, supervisor, independent contractor and/or employee of each defendant who violated or caused to be violated the minimum wage and overtime provisions of the Labor Code and/or any provision of the Industrial Welfare Commission's wage orders regulating hours and days of work.

7.    Plaintiff is unaware of the true names of Defendants DOES 1 through 100. Plaintiff sues said defendants by said fictitious names and will amend this complaint when the true names and capacities are ascertained or when such facts pertaining to liability are ascertained, or as permitted by law or by the Court. Plaintiff is informed and believes that each of the fictitiously named defendants is in some manner responsible for the events and allegations set forth in this complaint.

8.    Plaintiff makes the allegations in this complaint without any admission that, as to any particular allegation, Plaintiff bears the burden of pleading, proving, or persuading and Plaintiff reserves all of Plaintiff's right to plead in the alternative.

**IV.    DESCRIPTION OF ILLEGAL PAY PRACTICES**

9.    **Failure to pay overtime at the legal overtime rate by using the wrong formula and/or failing to include all remuneration in calculating the regular rate of pay for purposes of paying overtime**: Defendants employ non-exempt employees, including Plaintiff and others similarly-situated, with a compensation structure that includes additional remuneration, including commission and non-discretionary bonuses. At times during the four years prior to the filing of the Complaint, Plaintiff and similarly situated employees worked overtime hours under state law during pay periods in which they earned commission and non-discretionary bonuses.

10.    Under California law, in determining the regular rate of pay for purposes of calculating the proper overtime premium pay the employer must consider not only straight hourly wage

compensation but must also include the commission and bonus compensation.

11.    California Labor Code sections 510 and 1194 require an employer to compensate employees a higher rate of pay for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, and on any seventh consecutive day of work in a workweek.

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

(Lab. Code §510; see Wage Orders, subd. 3.)

12.    At times during four years prior to the filing of the initial Complaint to the present, Defendants failed to properly calculate the regular rate of pay for overtime and did not retroactively pay the unpaid wages due to this miscalculation. Defendants either used an incorrect legal formula and/or failed to include all remuneration in calculating the regular rate of pay due for overtime. This practice resulted in Plaintiff and all other similarly situated employees working hours in excess of 8 hours in a day and/or 40 hours in a week and Defendants paying them less overtime wages than they had earned under California law.

13.    At times, Defendants' employees would work overtime during a pay period they earned bonuses or commissions and Defendants would not use the legally required formula to calculate the overtime owed resulting in Defendants paying the employees less overtime than they were due under the law. For example, but not limited to the following examples, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked the following daily hours which Defendants credited Plaintiff:

- May 4, 2018: 7.36 hours
- May 5, 2018: 9.30 hours
- May 8, 2018: 7.52 hours
- May 9, 2018: 7.70 hours
- May 11, 2018: 7.85 hours

- May 12, 2018: 7.10 hours

Accordingly, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked at least 45.53 non-overtime hours and Plaintiff worked at least 1.3 overtime hours as a result of working at least 9.30 hours on May 5, 2018. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff's hourly rate was $15.68 per hour. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff also earned $177.78 in commission. Plaintiff should have earned $33.04 in overtime for the pay period from May 4, 2018 to May 17, 2018 when accounting for Plaintiff's commission pay earned during the pay period ([$15.68 per hour x 1.5 overtime rate increase x 1.3 overtime hours] + [$177.78 commissions ÷ 46.83 total hours x .5 x 1.3 overtime hours] = 30.576 + 2.16758488 = $33.04). (See *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 549-550 [Def.'s formula for bonus]; see Division of Labor Standards Enforcement's (DLSE) 2002 Enforcement Policies and Interpretations Manual (Manual) section 49.2.4.1.) Defendants only paid Plaintiff $32.91 in overtime from May 4, 2018 to May 17, 2018 resulting in unpaid overtime from Defendants using an incorrect formula known to Defendants. This practice of using an improper formula occurred at times throughout the four years prior to the filing of the complaint.

14.    At other times, employees would work overtime during an extended time period and earn a non-discretionary bonus over that time period; however, Defendants would fail to retroactively apportion back the bonus over the workweeks of the period it was earned for purposes of providing employees with additional compensation for each workweek the employees worked overtime during the period the bonus was earned. For example, on May 18, 2018, Defendants paid Plaintiff a non-discretionary flat sum bonus of $1,000 titled a One Time Cash Award which was earned by Plaintiff over the year of 2017 based on Defendants meeting a sales or profit number for 2017. Defendants never provided Plaintiff any additional overtime pay based on earning the One Time Cash Award related to Plaintiff's overtime worked in 2017. In 2017, Plaintiff worked approximately 1,671.07 non-overtime hours and at least 35.59 overtime hours which were credited to her by Defendant. For example, Plaintiff worked the following overtime hours in 2017 which Defendants credited to him:

- .57 hours of overtime from December 30, 2016 to January 5, 2017 during which Plaintiff worked approximately 8.49 hours on one workday and 40.08 hours during the workweek which Defendants credited Plaintiff;

- 3.22 hours of overtime from January 6, 2017 to January 12, 2017 during which Plaintiff worked approximately 8.97 hours on one workday and 42.25 hours during the workweek which Defendants credited Plaintiff;

- .57 hours of overtime from January 20, 2017 to January 26, 2017 during which Plaintiff worked approximately 8.57 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.51 hours of overtime from February 10, 2017 to February 16, 2017 during which Plaintiff worked several days over 8 hours on each workday totaling approximately 3.51 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .04 hours of overtime from March 3, 2017 to March 9, 2017 during which Plaintiff worked approximately 8.04 hours on one workday during the workweek which Defendants credited Plaintiff;

- .35 hours of overtime from March 10, 2017 to March 16, 2017 during which Plaintiff worked approximately 8.35 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.1 hours of overtime from March 24, 2017 to March 30, 2017 during which Plaintiff worked several days over 8 hours on each workday totaling approximately 3.1 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .03 hours of overtime from March 31, 2017 to April 6, 2017 during which Plaintiff worked approximately 8.03 hours on one workday during the workweek which Defendants credited Plaintiff;

- .23 hours of overtime from April 7, 2017 to April 13, 2017 during which Plaintiff worked approximately 8.23 hours on one workday during the workweek which Defendants credited Plaintiff;

- .83 hours of overtime from May 12, 2017 to May 18, 2017 during which Plaintiff worked approximately 8.83 hours on one workday during the workweek which Defendants credited Plaintiff;

- .46 hours of overtime from May 26, 2017 to June 1, 2017 during which Plaintiff worked approximately 8.46 hours on one workday during the workweek which Defendants credited Plaintiff;

- .02 hours of overtime from July 14, 2017 to July 20, 2017 during which Plaintiff worked approximately 8.02 hours on one workday during the workweek which Defendants credited Plaintiff;

- .78 hours of overtime from July 28, 2017 to August 3, 2017 during which Plaintiff worked approximately 8.78 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.87 hours of overtime from August 18, 2017 to August 24, 2017 during which Plaintiff worked approximately 3.87 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 3.2 hours of overtime from August 25, 2017 to August 31, 2017 during which Plaintiff worked approximately 3.2 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .07 hours of overtime from September 8, 2017 to September 14, 2017 during which Plaintiff worked approximately 8.07 hours on one workday during the workweek which Defendants credited Plaintiff;

- .11 hours of overtime from October 6, 2017 to October 12, 2017 during which Plaintiff worked approximately 8.11 hours on one workday during the workweek which Defendants credited Plaintiff;

- .27 hours of overtime from October 13, 2017 to October 19, 2017 during which Plaintiff worked approximately 8.27 hours on one workday during the workweek which Defendants credited Plaintiff;

- .2 hours of overtime from October 20, 2017 to October 26, 2017 during which Plaintiff worked approximately 8.2 hours on one workday during the workweek which Defendants credited Plaintiff;

- .09 hours of overtime from November 3, 2017 to November 9, 2017 during which Plaintiff worked approximately 8.09 hours on one workday during the workweek which Defendants credited Plaintiff;

- .08 hours of overtime from November 17, 2017 to November 23, 2017 during which Plaintiff worked approximately 8.08 hours on one workday during the workweek which Defendants credited Plaintiff;

- 1.46 hours of overtime from November 24, 2017 to November 30, 2017 during which Plaintiff worked approximately 1.46 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 1.4 hours of overtime from December 8, 2017 to December 14, 2017 during which Plaintiff worked approximately 1.4 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 9.75 hours of overtime from December 15, 2017 to December 21, 2017 during which Plaintiff worked approximately 9.75 hours total combined from the time worked over 8 hours on a workday and over 40 hours worked during the workweek which Defendants credited Plaintiff;

- 1.38 hours of overtime from December 22, 2017 to December 28, 2017 during which Plaintiff worked approximately 1.4 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff.

As noted above, Defendants never apportioned any amount of the bonus paid in 2018 back over the time period it was earned and failed to provide any additional compensation for the overtime worked during the time period the bonus was earned, Defendants failed to pay Plaintiff all overtime that was earned in 2017.

15.    As another example of DEFENDANTS' failure to calculate the regular rate of pay for overtime, on June 7, 2018, Defendants paid Plaintiff a non-discretionary bonus from a bonus pool, a

bonus amount which did not increase in proportion to the number of hours worked, in the amount of $115.72 earned over the time period of May 18, 2018 to May 23, 2018. From May 18, 2018 to May 23, 2018, Plaintiff worked approximately 16.78 total hours which Defendants gave Plaintiff credit and of which .45 hours were overtime based on working 8.03 hours on May 21, 2018 and 8.42 hours on May 22, 2018. Plaintiff should have received an additional $1.55 in overtime ($115.72 ÷ 16.33 hours x .45 overtime hours x .5 = $1.59) after apportioning the bonus back over May 18, 2018 to May 23, 2018, the time period it was earned. Defendants never provided Plaintiff any additional overtime pay based on apportioning the bonus back over the time period of May 18, 2018 to May 23, 2018 and Plaintiff worked at least .45 hours of overtime which Defendants credited her. This resulted in Defendants failing to provide Plaintiff with overtime which she had earned.

16.  **Failure to pay premium wages at the legally required rate to non-exempt employees to compensate them for workdays Defendants failed to provide legally compliant meal breaks or rest breaks:** Labor Code section 226.7 provides that if an employer "fails to provide an employee a meal or rest … period in accordance with state law. . . , the employer shall pay the employee one additional hour of pay at the employee's regular rate of compensation for each workday that the meal or rest . . .  period is not provided." Under California law, like in calculating overtime, in determining the regular rate of pay for purposes of calculating the proper meal period or rest period premium pay, the employer must consider not only straight hourly wage compensation but must also include payment of additional remuneration including, but not limited to, non-discretionary bonuses or commissions. (*Magadia v. Wal-Mart Associates, Inc.,* No. 5:17-cv-00062-LHK, 2019 U.S. Dist. LEXIS 91792, at *29-30  (N.D. Cal. May 31, 2019) (finding as a conclusion of law following trial that a meal period premium wage pursuant to Labor Code section 226.7 must be calculated by including non-discretionary bonus payments); *Magadia v. Wal-Mart Associates, Inc.,* No. 5:17-cv-00062-LHK, at 5-8 (N.D. Cal. Sept. 28, 2018) (denying motion for summary judgment holding that a meal period premium wage pursuant to Labor Code section 226.7 must be calculated by including non-discretionary bonus payments); *Ibarra v. Wells Fargo Bank, N.A.*, No. CV 17-4344 PA (ASx), 2018 U.S. Dist. LEXIS 78513, at *6-15, 2018 WL 2146380 (C.D. Cal. May 8, 2018) (holding as a conclusion of law that that a meal period premium wage pursuant to Labor Code section 226.7 must

be calculated by including non-discretionary bonus payments); *Studley v. All. Healthcare Servs., Inc.*, No. SACV 10-00067-CJC (ANx), 2012 U.S. Dist. LEXIS 190964, at *11-14, 2012 WL 12286522 (C.D. Cal. July 26, 2012) (holding meal and rest period premium wages must include all remuneration alike to overtime regular rate).)

17.    Plaintiff and other similarly situated employees often worked as non-exempt employees for DEFENDANTS in shifts in excess of 3.5, hours at times in excess of 5 hours in a workday. At times within the four years preceding the filing of the complaint, DEFENDANTS would not provide Plaintiff and other similarly situated employees with all legally required or legally compliant meal or rest periods, usually by not providing the employee timely meal periods. Defendants had a policy that an employee could not take a meal or rest break if they were currently engaged with a customer or if there were not enough employees to cover the sales floor, e.g., other employees were busy or not enough employees were scheduled for coverage, an employee was late for their shift, an employee did not appear for their shift, or an employee was late coming back from a break. At times, this resulted in employees from receiving untimely breaks. At times within the four years preceding the filing of the complaint, DEFENDANTS would pay the employees a meal period premium wage or rest period premium wage when employees were not provided all legally compliant or legally required meal or rest periods. However, during these times DEFENDANTS paid meal period or rest period premiums, DEFENDANTS would often pay the premium at less than the employee's regular rate of pay and only pay the amount at the employees' hourly rate of pay.

18.    This practice resulted in Plaintiff and all other similarly situated employees not receiving all meal period or rest period premium wages to which they were entitled to compensate them for workdays which DEFENDANTS did not provide them with legally compliant meal periods or rest periods in compliance with California law. This practice violated Labor Code section 226.7 and Wage Orders, subd. 11, 12.

19.    For example, and not limited to this example, on May 4, 2018, Plaintiff began her shift at approximately 11:43 a.m. and ended her shift at approximately 7:36 p.m., but did not receive her meal period until approximately 5:34 p.m., after the end of her fifth hour of work, because she was engaged with a customer (or possibly there was no coverage on the sales floor). On May 9, 2018,

Plaintiff began her shift at approximately 9:02 a.m. and ended at approximately 5:33 p.m., but did not receive her meal period until approximately 2:11 p.m., after the end of her fifth hour of work because she was engaged with a customer (or possibly there was no coverage on the sales floor). As a result of Plaintiff not receiving timely meal breaks, on May 24, 2018, Defendants paid Plaintiff two hours of pay for the untimely meal breaks. However, Defendants paid Plaintiff the two hours of pay at her hourly rate of pay of $15.68 per hour. Plaintiff had earned $177.78 in commission from May 4, 2018 to May 17, 2018, but Defendants did not account for the earned commission in calculating Plaintiff's regular rate of pay for her meal period premium wage. Defendants should have paid Plaintiff her meal period premium wages at approximately $19.48 per hour ($15.68 + [$177.78 ÷ 46.83 total hours] = $19.48). Accordingly, Defendants paid Plaintiff less meal period premium wages that were due in violation of Labor Code section 226.7.

20.    As another example, on April 10, 2018, Plaintiff began her shift at approximately 8:34 a.m. and ended her shift at approximately 5:19 p.m., but did not receive her meal period until approximately 1:45 p.m., after the end of her fifth hour of work, because she was engaged with a customer (or possibly there was no coverage on the sales floor). On April 17, 2018, Plaintiff began her shift at approximately 8:57 a.m. and ended at approximately 5:29 p.m., but did not receive her meal period until approximately 2:32 p.m., after the end of her fifth hour of work because she was engaged with a customer (or possibly there was no coverage on the sales floor). As a result of Plaintiff not receiving timely meal breaks, on April 26, 2018, Defendants paid Plaintiff two hours of pay for the untimely meal breaks. However, Defendants paid Plaintiff the two hours of pay at her hourly rate of pay of $15.68 per hour. Plaintiff had earned $131.99 in commission and worked a total of 66.21 hours from April 6, 2018 to April 19, 2018, but Defendants did not account for the earned commission in calculating Plaintiff's regular rate of pay for her meal period premium wage. Defendants should have paid Plaintiff $17.67 per hour for meal period premiums ($15.68 + [$131.99 ÷ 66.21 total hours] = $17.67.) Accordingly, Defendants paid Plaintiff less meal period premium wages that were due in violation of Labor Code section 226.7.

21.    **Failure to pay minimum wage, or overtime wages if applicable, for all hours worked to non-exempt employees:** In California, an employer is required to pay an employee for

all "hours worked" which includes all time that an employee is under control of the employer and including all time that the employee is suffered and permitted to work whether or not the employee is required to work. This includes time an employee is required to be present at a certain location whether or not the employee is working, including meal times. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840-842, *Morillion vs. Royal Packing Co.* (2000) 22 Cal.4th 575, 582.) Labor Code sections 1194, 1197 and the Wage Orders require that an employer compensate employees for "hours worked" at least at a minimum wage rate of pay as established by the wage orders. Labor Code sections 510, 1194 and the Wage Orders require that an employer compensate employees for "hours worked" at a higher rate of pay when an employee works over a certain number of hours: 1.5 times the regular rate of pay for hours worked over 8 hours up to 12 hours in a workday, over 40 hours in a workweek, or up to 8 hours on a seventh day of work in a workweek or 2 times the regular rate of pay for hours worked over 12 hours in a workday.

22.    At times during the four years prior to the filing of the Complaint, DEFENDANTS used policies and procedures of requiring Plaintiff or other similarly situated employees to clock out and then perform post-closing procedures off the clock which they were not provided wages. For example, at times during the four years prior to the filing of the Complaint, employees were required to wait for security procedures to be completed after clocking out before being able to leave the premises resulting in time after clocking out which they were under control of DEFENDANTS but were not provided wages. Pursuant to DEFENDANTS' policy during approximately the last two years of her employment, on closing shifts, Plaintiff and other employees would clock out after their shift, but after being clocked out DEFENDANTS would require Plaintiff and other employees to wait for the store gate to be closed and the alarm to be turned on and finish its auditory arming procedure before DEFENDANTS permitted the Plaintiff and other employees to leave. This time spent waiting for DEFENDANTS' security procedure to be completed would take approximately 3-4 minutes. Because this procedure occurred after the employees had already clocked out, this was not compensated with wages. At times, Plaintiff and other employees had already worked 8 hours in a workday or 40 hours in a workweek, entitling them to the increased overtime rate for those time period. As a result of these policies, Defendants failed to compensate these employees with wages at

least at a minimum wage rate for all time worked and at an overtime rate when the employees had already worked 8 hours in a workday, 40 hours in a workweek, or hours on a seventh consecutive day of work in a workweek.

23.    For example, and not limited to the following examples, on April 12, 2018, Plaintiff worked from approximately 3:04 p.m. to 9:18 p.m. when Plaintiff clocked out of the closing shift. However, after clocking out, DEFENDANTS' security procedure and practice did not permit Plaintiff to immediately leave the premises upon clocking out. Pursuant to DEFENDANTS' security procedure, Plaintiff and other employees on the closing shift were required to wait while the manager locked up the store, closed the gate, turned on the alarm, and then waited for the alarm's auditory system to stop beeping to indicate the alarm was fully armed before Plaintiff and other employees were permitted to leave. This resulted in Plaintiff being required by Defendants not being able to leave until approximately 9:22 p.m. without pay from 9:18 p.m. until 9:22 p.m.

24.    As another example, on April 24, 2018, Plaintiff worked from approximately 1:00 p.m. to 9:20 p.m. when Plaintiff clocked out for her closing shift. However, after clocking out, DEFENDANTS' security procedure and practice did not permit Plaintiff to immediately leave the premises upon clocking out. Pursuant to DEFENDANTS' security procedure, Plaintiff and other employees on the closing shift were required to wait while the manager locked up the store, closed the gate, turned on the alarm, and then waited for the alarm's auditory system to stop beeping to indicate the alarm was fully armed before Plaintiff and other employees were permitted to leave. This resulted in Plaintiff being required by Defendants not being able to leave until approximately 9:24 p.m. without pay from 9:20 p.m. until 9:24 p.m.

25.    As another example, during the time period of December 15, 2017 to December 21, 2017, Plaintiff worked approximately 9.75 hours of total combined from the time worked over 8 hours on a workday and over 40 hours worked during the workweek which Defendants credited Plaintiff Based on Plaintiff's information and belief Plaintiff worked approximately 8.43 hours on December 22, 2018 on a closing shift when she clocked out. However, after clocking out, DEFENDANTS' security procedure and practice did not permit Plaintiff to immediately leave the premises upon clocking out. Pursuant to DEFENDANTS' security procedure, Plaintiff and other employees on the

closing shift were required to wait while the manager locked up the store, closed the gate, turned on the alarm, and then waited for the alarm's auditory system to stop beeping to indicate the alarm was fully armed before Plaintiff and other employees were permitted to leave. This resulted in Plaintiff being required by Defendants not being able to leave until approximately 4 minutes after she clocked out without pay.

26.    At times during the four years prior to the filing of the Complaint, DEFENDANTS' policies and procedures were applied to all non-exempt employees in California and resulted in non-exempt employees working time which was not compensated any wages in violation of Labor Code sections 1194, 1197, and the Wage Orders. DEFENDANTS owe wages at a minimum wage rate, or overtime rate if applicable, for unpaid time to each of their California non-exempt employees who did not receive wages for all hours worked based on DEFENDANTS' rounding or time shaving.

27.    **Itemized Wage Statement Violations**: California Labor Code section 226(a) provides (inter alia) that, upon paying an employee his or her wages, the employer must "furnish each of his or her employees ... an itemized statement in writing showing: (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided, that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the pay period for which the employee is paid, (7) the name of the employee and his or her social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee."

28.    At times during the one year prior to the filing of the Complaint, DEFENDANTS failed to provide accurate and complete wage statements to Plaintiff and other non-exempt employees. At times during the one year prior to the filing of the Complaint, DEFENDANTS provided itemized wage statements which did not state or did not accurately state the employees' total hours worked or rates in effect during the pay period. In addition, during the one year prior to the filing of the

Complaint, the wage statements did not accurately state the correct overtime rate and/or meal and/or rest period premium rates as stated above in more detail, and as a result of the aforementioned conduct (i.e., failure to properly calculate overtime, meal and rest periods and failure to account for all time worked for hours off the clock) inaccurately stated: the gross wages earned, the total hours worked, the net wages earned, and the applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate.

29.    At times during the one year prior to the filing of the Complaint, DEFENDANTS applied these policies and procedures to Plaintiff and other non-exempt employees in California which resulted in DEFENDANTS failing to provide complete and accurate wage statements to non-exempt employees in compliance with Labor Code section 226, subdivision (a).

30.    For example, but not limited to the following examples, for the pay period from May 18, 2018 to May 31, 2018, Plaintiff worked the following daily hours:

- May 21, 2018: 8.03 hours, clocking in at 10:02 a.m. and clocking out at 6:37 p.m. with a meal period taken from 2:19 p.m. to 2:52 p.m.;

- May 22, 2018: 8.42 hours, clocking in at 9:00 a.m. and clocking out at 5:25 p.m. with a meal period taken from 1:11 p.m. to 1:39 p.m.; and

- May 23, 2018: .33 hours, clocking in at 1:10 p.m. and clocking out at 1:30 p.m.

31.    Accordingly, for the pay period from May 18, 2018 to May 31, 2018, Plaintiff worked 16.33 non-overtime hours and Plaintiff worked at least .72 overtime hours as a result of working 8.03 hours on May 21, 2018 and 8.42 hours on May 22, 2018. However, Defendants prepared a wage statement for Plaintiff for the pay period beginning May 18, 2018 to May 31, 2018 which indicates the following:

- that Plaintiff worked .03 hours of overtime from May 25, 2018 to May 31, 2018 at the rate of $23.52 per hour for a total of $0.72; and

- that Plaintiff worked 24 hours at $15.68 per hour from May 25, 2018 to May 31, 2018 for a total payment of wages of $376.32.

The wage statement prepared for Plaintiff inaccurately states the number of overtime hours Plaintiff worked for the pay period from May 18, 2018 to May 31, 2018, indicating .03 hours of overtime

when she worked .45 hours of overtime as indicated above. This also resulted in Plaintiff's wage statement inaccurately reflecting the amount of wages she actually earned for the pay period beginning May 18, 2018 to May 31, 2018. The wage statement also inaccurately states the number non-overtime hours she worked, from May 18, 2018 to May 31, 2018, indicating .24 hours of overtime when she worked 16.33 non-overtime hours as indicated above. Defendants had the ability to prepare an accurate wage statement reflecting Plaintiff's worked hours from May 18, 2018 to May 31, 2018, based on her payroll documents which Plaintiff had possession. Instead, Defendants prepared a wage statement the pay period from May 18, 2018 to May 31, 2018 which inaccurately stated the number of hours that she worked at each hourly rate and gross and net wages earned.

32.    For example, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked the following daily hours which Defendants credited Plaintiff:

- May 4, 2018: 7.36 hours

- May 5, 2018: 9.30 hours

- May 8, 2018: 7.52 hours

- May 9, 2018: 7.70 hours

- May 11, 2018: 7.85 hours

- May 12, 2018: 7.10 hours

33.    Accordingly, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked at least 45.53 non-overtime hours and Plaintiff worked at least 1.3 overtime hours as a result of working at least 9.30 hours on May 5, 2018. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff's hourly rate was $15.68 per hour. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff also earned $177.78 in commission. Plaintiff should have earned $33.04 in overtime for the pay period from May 4, 2018 to May 17, 2018 when accounting for Plaintiff's commission pay earned during the pay period ([$15.68 per hour x 1.5 overtime rate increase x 1.3 overtime hours] + [$177.78 commissions ÷ 46.83 total hours x .5 x 1.3 overtime hours] = 30.576 + 2.16758488 = $33.04). (See *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 549-550 [Def.'s formula for bonus]; see Division of Labor Standards Enforcement's (DLSE) 2002 Enforcement Policies and Interpretations Manual (Manual) section 49.2.4.1.) Defendants' wage statement reflected it only paid

Plaintiff $32.91 in overtime based on an incorrect overtime rate of $25.31 per hour from May 4, 2018 to May 17, 2018, rather than reflecting the $33.04 which should have been paid resulting in an inaccurate wage statement regarding the total wages earned, the net wages earned, and hourly rate paid.

34.    As another example, on May 4, 2018, Plaintiff began her shift at approximately 11:43 a.m. and ended her shift at approximately 7:36 p.m., but did not receive her meal period until approximately 5:34 p.m., after the end of her fifth hour of work, because she was engaged with a customer (or possibly there was no coverage on the sales floor). On May 9, 2018, Plaintiff began her shift at approximately 9:02 a.m. and ended at approximately 5:33 p.m., but did not receive her meal period until approximately 2:11 p.m., after the end of her fifth hour of work because she was engaged with a customer (or possibly there was no coverage on the sales floor). As a result of Plaintiff not receiving timely meal breaks, on May 24, 2018, Defendants paid Plaintiff the two hours of pay at her hourly rate of pay of $15.68 for meal period premium wages which was reflected on her wage statement as 2 hours at $15.68 per hour. From May 4, 2018, to May 17, 2018, Plaintiff worked 46.83 total hours which she was credited by Defendants and earned $177.78 in commission Plaintiff's regular rate of pay for that pay period for meal period wages should have been approximately $19.48 per hour ($15.68 hourly rate + ($177.78 commission ÷ 46.83 total hours) = $19.48). Accordingly, Plaintiff's wage statement for that period inaccurately reflected the hourly rate for the meal period premiums, the total wages earned, and net wage earned.

35.    **Failure to Pay Former California Non-Exempt Employees All Wages Due at Time of Termination/Resignation**: An employer is required to pay all unpaid wages timely after an employee's employment ends. The wages are due immediately upon termination (Lab. Code §201) or within 72 hours of resignation (Lab. Code §202).

36.    At times during the four years prior to the filing of the complaint to the present, DEFENDANTS failed to pay Plaintiff and other non-exempt employees with all wages as mentioned in more detail above (including unpaid overtime as a result of improperly calculated overtime rate, unpaid meal and rest period premiums as a result of improperly calculating the employees' regular rate of pay, and unpaid minimum wage or overtime as a result of not paying for post-closing

procedures off the clock) during their employment and never paid these amounts after Plaintiff and other California employees separated employment with DEFENDANTS. As a result, DEFENDANTS failed to pay those employees timely after each employee's termination and/or resignation in violation of Labor Code sections 201 and 202. In addition, DEFENDANTS also failed to timely pay employees their final wages following separation of employment.

37.    For example, and not limited to this example, Defendants terminated Plaintiff on or about May 23, 2018. DEFENDANTS did not provide prepare Plaintiff's final pay check for all unpaid wages at the time of her termination.

38.    For Plaintiff's bonus payment that she earned from approximately May 18, 2018 until the end of her employment on May 23, 2018, Plaintiff was not paid bonus payment, earned from approximately May 18, 2018 to May 23, 2018, until June 7, 2018. DEFENDANTS had advance knowledge that they were going to terminate Plaintiff on May 23, 2018, and a district manager was involved in calling her on May 23, 2018 to terminate her employment after she came to work on May 23, 2018. Accordingly, Defendants had the ability to prepare all of her unpaid wages in advance of her termination and then provide her all wages at the time of her termination. Instead, DEFENDANTS did not provide Plaintiff with her unpaid bonus pool payment for May 18, 2018 to May 23, 2018, until June 7, 2018.

39.    As an example of Defendants failing to pay all earned wages when DEFENDANTS failed to pay proper overtime: Defendants employees would work overtime during a pay period they earned bonuses or commissions and Defendants would not use the legally required formula to calculate the overtime owed resulting in Defendants paying the employees less overtime than they were due under the law. For example, but not limited to the following examples, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked the following daily hours which Defendants credited Plaintiff:

- May 4, 2018: 7.36 hours
- May 5, 2018: 9.30 hours
- May 8, 2018: 7.52 hours
- May 9, 2018: 7.70 hours

- May 11, 2018: 7.85 hours

- May 12, 2018: 7.10 hours

Accordingly, for the pay period from May 4, 2018 to May 17, 2018, Plaintiff worked at least 45.53 non-overtime hours and Plaintiff worked at least 1.3 overtime hours as a result of working at least 9.30 hours on May 5, 2018. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff's hourly rate was $15.68 per hour. For the pay period from May 4, 2018 to May 17, 2018, Plaintiff also earned $177.78 in commission. Plaintiff should have earned $33.04 in overtime for the pay period from May 4, 2018 to May 17, 2018 when accounting for Plaintiff's commission pay earned during the pay period ([$15.68 per hour x 1.5 overtime rate increase x 1.3 overtime hours] + [$177.78 commissions ÷ 46.83 total hours x .5 x 1.3 overtime hours] = 30.576 + 2.16758488 = $33.04). (See *Alvarado v. Dart Container Corp. of California* (2018) 4 Cal.5th 542, 549-550 [Def.'s formula for bonus]; see Division of Labor Standards Enforcement's (DLSE) 2002 Enforcement Policies and Interpretations Manual (Manual) section 49.2.4.1.) Defendants only paid Plaintiff $32.91 in overtime from May 4, 2018 to May 17, 2018 resulting in unpaid overtime using an incorrect formula known to Defendant which was never paid to Plaintiff.

40.    At other times, employees would work overtime during an extended time period and earn a non-discretionary bonus over that time period; however, Defendants would fail to retroactively apportion back the bonus over the workweeks of the period it was earned for purposes of providing employees with additional compensation for each workweek the employees worked overtime during the period the bonus was earned. For example, on May 18, 2018, Defendants paid Plaintiff a non-discretionary flat sum bonus of $1,000 titled a One Time Cash Award which was earned by Plaintiff over the year of 2017 based on Defendants meeting a sales number for 2017. Defendants never provided Plaintiff any additional overtime pay based on earning the One Time Cash Award related to Plaintiff's overtime worked in 2017. In 2017, Plaintiff worked approximately 1,671.07 non-overtime hours and approximately 35.59 overtime hours which were credited to him by Defendant. For example, Plaintiff worked the following overtime hours in 2017 which Defendants credited to him:

- .57 hours of overtime from December 30, 2016 to January 5, 2017 during which Plaintiff worked approximately 8.49 hours on one workday and 40.08 hours during the workweek which Defendants credited Plaintiff;

- 3.22 hours of overtime from January 6, 2017 to January 12, 2017 during which Plaintiff worked approximately 8.97 hours on one workday and 42.25 hours during the workweek which Defendants credited Plaintiff;

- .57 hours of overtime from January 20, 2017 to January 26, 2017 during which Plaintiff worked approximately 8.57 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.51 hours of overtime from February 10, 2017 to February 16, 2017 during which Plaintiff worked several days over 8 hours on each workday totaling approximately 3.51 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .04 hours of overtime from March 3, 2017 to March 9, 2017 during which Plaintiff worked approximately 8.04 hours on one workday during the workweek which Defendants credited Plaintiff;

- .35 hours of overtime from March 10, 2017 to March 16, 2017 during which Plaintiff worked approximately 8.35 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.1 hours of overtime from March 24, 2017 to March 30, 2017 during which Plaintiff worked several days over 8 hours on each workday totaling approximately 3.1 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .03 hours of overtime from March 31, 2017 to April 6, 2017 during which Plaintiff worked approximately 8.03 hours on one workday during the workweek which Defendants credited Plaintiff;

- .23 hours of overtime from April 7, 2017 to April 13, 2017 during which Plaintiff worked approximately 8.23 hours on one workday during the workweek which Defendants credited Plaintiff;

- .83 hours of overtime from May 12, 2017 to May 18, 2017 during which Plaintiff worked approximately 8.83 hours on one workday during the workweek which Defendants credited Plaintiff;

- .46 hours of overtime from May 26, 2017 to June 1, 2017 during which Plaintiff worked approximately 8.46 hours on one workday during the workweek which Defendants credited Plaintiff;

- .02 hours of overtime from July 14, 2017 to July 20, 2017 during which Plaintiff worked approximately 8.02 hours on one workday during the workweek which Defendants credited Plaintiff;

- .78 hours of overtime from July 28, 2017 to August 3, 2017 during which Plaintiff worked approximately 8.78 hours on one workday during the workweek which Defendants credited Plaintiff;

- 3.87 hours of overtime from August 18, 2017 to August 24, 2017 during which Plaintiff worked approximately 3.87 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 3.2 hours of overtime from August 25, 2017 to August 31, 2017 during which Plaintiff worked approximately 3.2 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- .07 hours of overtime from September 8, 2017 to September 14, 2017 during which Plaintiff worked approximately 8.07 hours on one workday during the workweek which Defendants credited Plaintiff;

- .11 hours of overtime from October 6, 2017 to October 12, 2017 during which Plaintiff worked approximately 8.11 hours on one workday during the workweek which Defendants credited Plaintiff;

- .27 hours of overtime from October 13, 2017 to October 19, 2017 during which Plaintiff worked approximately 8.27 hours on one workday during the workweek which Defendants credited Plaintiff;

- .2 hours of overtime from October 20, 2017 to October 26, 2017 during which Plaintiff worked approximately 8.2 hours on one workday during the workweek which Defendants credited Plaintiff;

- .09 hours of overtime from November 3, 2017 to November 9, 2017 during which Plaintiff worked approximately 8.09 hours on one workday during the workweek which Defendants credited Plaintiff;

- .08 hours of overtime from November 17, 2017 to November 23, 2017 during which Plaintiff worked approximately 8.08 hours on one workday during the workweek which Defendants credited Plaintiff;

- 1.46 hours of overtime from November 24, 2017 to November 30, 2017 during which Plaintiff worked approximately 1.46 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 1.4 hours of overtime from December 8, 2017 to December 14, 2017 during which Plaintiff worked approximately 1.4 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff;

- 9.75 hours of overtime from December 15, 2017 to December 21, 2017 during which Plaintiff worked approximately 9.75 hours total combined from the time worked over 8 hours on a workday and over 40 hours worked during the workweek which Defendants credited Plaintiff;

- 1.38 hours of overtime from December 22, 2017 to December 28, 2017 during which Plaintiff worked approximately 1.4 hours total combined from the time worked over 8 hours on a workday during the workweek which Defendants credited Plaintiff.

As a result of Defendants' failure to apportion any amount of bonus back over the time period it was earned and failure to provide any additional compensation for the overtime worked during the time period the bonus was earned, Defendants failed to pay Plaintiff all overtime that was earned in 2017 and never paid these amounts of unpaid overtime following Plaintiff's separation of employment.

41.    At times, DEFENDANTS also failed to pay all meal or rest period premiums owed to Plaintiff and other employees based on DEFENDANTS' failure to include all remuneration earned

during the period the meal or rest period premium was earned. DEFENDANTS never retroactively paid these unpaid meal or rest period premium wages when Plaintiff or other employees' employment ended. For example, and not limited to this example, on May 4, 2018, Plaintiff began her shift at approximately 11:43 a.m. and ended her shift at approximately 7:36 p.m., but did not receive her meal period until approximately 5:34 p.m., after the end of her fifth hour of work, because she was engaged with a customer (or possibly there was no coverage on the sales floor). On May 9, 2018, Plaintiff began her shift at approximately 9:02 a.m. and ended at approximately 5:33 p.m., but did not receive her meal period until approximately 2:11 p.m., after the end of her fifth hour of work because she was engaged with a customer (or possibly there was no coverage on the sales floor). As a result of Plaintiff not receiving timely meal breaks, on May 24, 2018, Defendants paid Plaintiff two hours of pay for the untimely meal breaks. However, Defendants paid Plaintiff the two hours of pay at her hourly rate of pay of $15.68 per hour. Plaintiff had earned $177.78 in commission from May 4, 2018 to May 17, 2018, but Defendants did not account for the earned commission in calculating Plaintiff's regular rate of pay for her meal period premium wage. Accordingly, Defendants paid Plaintiff less meal period premium wages that were due in violation of Labor Code section 226.7. Defendants never paid these unpaid amounts following Plaintiff's separation of employment from Defendants.

42.    As another example, on April 10, 2018, Plaintiff began her shift at approximately 8:34 a.m. and ended her shift at approximately 5:19 p.m., but did not receive her meal period until approximately 1:45 p.m., after the end of her fifth hour of work, because she was engaged with a customer (or possibly there was no coverage on the sales floor). On April 17, 2018, Plaintiff began her shift at approximately 8:57 a.m. and ended at approximately 5:29 p.m., but did not receive her meal period until approximately 2:32 p.m., after the end of her fifth hour of work because she was engaged with a customer (or possibly there was no coverage on the sales floor). As a result of Plaintiff not receiving timely meal breaks, on April 26, 2018, Defendants paid Plaintiff two hours of pay for the untimely meal breaks. However, Defendants paid Plaintiff the two hours of pay at her hourly rate of pay of $15.68 per hour. Plaintiff had earned $131.99 in commission from April 6, 2018 to April 19, 2018, but Defendants did not account for the earned commission in calculating Plaintiff's regular rate of pay for her meal period premium wage. Accordingly, Defendants paid Plaintiff less meal

period premium wages that were due in violation of Labor Code section 226.7 Defendants never paid these unpaid amounts following Plaintiff's separation of employment from Defendants.

43.     As a result, DEFENDANTS failed to pay those employees timely after each employee's termination and/or resignation in violation of Labor Code sections 201 and 202.

**V.     CLASS DEFINITIONS AND CLASS ALLEGATIONS**

44.     Plaintiff brings this action on behalf of herself, on behalf of all others similarly situated, and on behalf of the General Public, and as a member of a Class defined as follows:

A.     **Overtime Regular Rate Class**: All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action through the date notice is mailed to a certified class who were paid overtime using the incorrect calculation for overtime and paid less than the legally required overtime rate.

B.     **Premium Regular Rate Class**: All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action through the date notice is mailed to a certified class who were paid a meal period premium or rest period premium at less than the legally required rate.

C.     **Minimum Wage Class**: All current and former non-exempt employees employed in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class, who were not paid wages at the legal minimum wage rate for all hours worked.

D.     **Overtime Class:** All current and former non-exempt employees in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class, who were not paid wages for all hours worked during time periods he or she had already worked in excess of 8 hours in a day, 40 hours in a week, or were working on a seventh consecutive day of work.

E.     **Wage Statement Class**: All current and former non-exempt employees employed by Defendants in California at any time within the four years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class who received inaccurate or incomplete wage statements.

F.    **Waiting Time Class**: All current and former non-exempt employees employed by Defendants in California at any time within the three years prior to the filing of the initial complaint in this action and through the date notice is mailed to a certified class and he or she did not timely receive all unpaid wages following his or her separation of employment.

G.    **California Class**: All aforementioned classes are here collectively referred to as the "California Class".

45.    There is a well-defined community of interest in the litigation and the classes are ascertainable:

A.    **Numerosity**: While the exact number of class members in each class is unknown to plaintiff at this time, the Plaintiff classes are so numerous that the individual joinder of all members is impractical under the circumstances of this case.

B.    **Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff classes and predominate over any questions that affect only individual members of each class. The common questions of law and fact include, but are not limited to:

i.    Whether Defendants failed to provide properly calculated overtime to the Overtime Regular Rate Class;

ii.    Whether Defendants failed to provide meal and/or rest period premiums at the legal rate of pay to the Premium Regular Rate Class;

iii.    Whether Defendants failed to pay wages for all hours worked to the Minimum Wage Class and Overtime Class;

iv.    Whether Defendants failed to provide the Wage Statement Class with accurate and complete itemized wage statements;

v.    Whether Defendants failed to provide the Waiting Time Class with all unpaid wages within the statutory time period following separation of employment;

vi.    Whether Defendants committed unlawful business acts or practices within the meaning of Business and Professions Code section 17200 *et seq.*;

vii.    Whether Class Members are entitled to unpaid wages, penalties,

1    interest, fees and other relief in conjunction with his claims; and

2                    viii.    Whether, as a consequence of Defendants' unlawful conduct, the Class

3    Members are entitled to restitution, and/or equitable relief;

4            C.    **Typicality**: Plaintiff's claims are typical of the claims of the class members in

5    each of the classes. Plaintiff and members of the Ovetime Regular Rate Class sustained damages

6    and/or loss of vested wages based on Defendants' failure to properly calculate the meal and/or rest

7    break premiums due to employees. Plaintiff and members of the Premium Regular Rate Class

8    sustained damages and/or loss of vested wages based on Defendants' failure to properly calculate the

9    meal and/or rest break premiums due to employees. Plaintiff and members of the Minimum Wage

10   Class and/or Overtime Class sustained damages and/or loss of vested wages based on Defendants'

11   failure to pay wages for all hours worked. Plaintiff and the members of the Wage Statement Class

12   sustained damages arising out of Defendants' failure to furnish them with accurate and/or complete

13   itemized wage statements in compliance with Labor Code section 226. Plaintiff and the members of

14   the Waiting Time Class sustained damages arising out of Defendants' failure to provide all unpaid

15   wages due upon the end of their employment.

16           D.    **Adequacy of Representation**: Plaintiff will fairly and adequately protect the

17   interests of the members of each class. Plaintiff has no interest that is adverse to the interests of the

18   other class members. Plaintiff's Counsel is qualified to conduct the litigation.

19           E.    **Superiority**: A class action is superior to other available means for the fair and

20   efficient adjudication of this controversy. Because individual joinder of all members of each class is

21   impractical, class action treatment will permit a large number of similarly situated persons to

22   prosecute their common claims in a single forum simultaneously, efficiently, and without the

23   unnecessary duplication of effort and expense that numerous individual actions would engender. The

24   expenses and burdens of individual litigation would make it difficult or impossible for individual

25   members of each class to redress the wrongs done to them, while important public interests will be

26   served by addressing the matter as a class action. The cost to and burden on the court system of

27   adjudication of individualized litigation would be substantial, and substantially more than the costs

28   and burdens of a class action. Individualized litigation would also present the potential for inconsistent

or contradictory judgments.

F.     **Public Policy Consideration**: Employers throughout the state violate wage and hour laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing actions because they perceive their former employers can blacklist them in their future endeavors through negative references and by other means. Class actions provide the class members who are not named in the complaint with a type of anonymity that allows for vindication of their rights.

## FIRST CAUSE OF ACTION

**FAILURE TO PROVIDE OVERTIME WAGES AT THE LEGALLY REQUIRED RATE IN VIOLATION OF LABOR CODE SECTIONS 510, 1194, AND WAGE ORDERS**

**(Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the Overtime Regular Rate Class)**

46.     Plaintiff hereby incorporates by reference all paragraphs above, as if fully set herein by reference.

47.     At all times relevant to this Complaint, Plaintiff and the members of the Overtime Regular Rate Class were non-exempt employees of DEFENDANTS in California and covered by California Labor Code sections 510, 1194, and the Wage Orders.

48.     Under California law, in determining the regular rate of pay for purposes of calculating the proper overtime premium pay the employer must consider not only straight hourly wage compensation but must also include the commission and bonus compensation.

49.     California Labor Code sections 510 and 1194 require an employer to compensate employees a higher rate of pay for hours worked in excess of 8 hours in a workday, 40 hours in a workweek, and on any seventh consecutive day of work in a workweek.

> Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee. In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee.

(Lab. Code §510; see Wage Orders, subd. 3.)

50.     At times during four years prior to the filing of the initial Complaint to the present, Defendants failed to properly calculate the regular rate of pay for overtime and did not retroactively pay the unpaid wages due to this miscalculation. Defendants either used an incorrect legal formula and/or failed to include all remuneration in calculating the regular rate of pay due for overtime. This practice resulted in Plaintiff and all other similarly situated employees working hours in excess of 8 hours in a day and/or 40 hours in a week and Defendants paying them less overtime wages than they had earned under California law.

51.     Pursuant to California Labor Code sections 510, 1194, and the Wage Orders, Plaintiff and the Overtime Class members are entitled to recover the full amount of their unpaid overtime wages, prejudgment interest, and attorneys' fees and costs.

## SECOND CAUSE OF ACTION

**FAILURE TO PROVIDE MEAL BREAK AND REST BREAK PREMIUMS AT THE LEGALLY REQUIRED RATE IN VIOLATION OF LABOR CODE SECTIONS 226.7, 512, AND WAGE ORDERS**

**(Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the Premium Regular Rate Class)**

52.     Plaintiff hereby incorporates by reference all paragraphs above, as if fully set herein by reference.

53.     At all times relevant to this Complaint, Plaintiff and the members of the Premium Regular Rate Class were non-exempt employees of DEFENDANTS in California and covered by California Labor Code sections 226.7, 512, and the Wage Orders.

54.     California law requires an employer to provide an employee, who works more than 5 hours, an uninterrupted meal period of no less than 30-minutes before the end of a 5 hour work period. (Lab. Code §512; Wage Orders, subd. 11.) An employer may not employ an employee for a work period of more than 10 hours per day without providing the employee with a second meal period of not less than 30 minutes before the end of the 10th hour of work. (*Id.*) If an employer fails to provide an employee a meal period in accordance with the law, the employer must pay the employee one hour

1    of pay at the employee's regular rate of compensation for each work day that a legally required meal

2    period was not provided or was not duty free. (Lab. Code §226.7; Wage Oders, subd. 11.)

3        55.    California law also requires an employer to provide an employee rest periods, which

4    insofar as practicable shall be in the middle of each work period. (Wage Orders, subd. 12; see Lab.

5    Code § 226.7.) Under California law, "[e]mployees are entitled to 10 minutes' rest for shifts from

6    three and one-half to six hours in length, 20 minutes for shifts of more than six hours up to 10 hours,

7    30 minutes for shifts of more than 10 hours up to 14 hours, and so on." (*Brinker v. Superior Court*

8    (2012) 53 Cal.4th 1004, 1029; Wage Orders, subd. 12. If an employer fails to provide an employee a

9    timely and legally compliant rest period, the employer must pay the employee one hour of pay at the

10   employee's regular rate of compensation for each work day that a legally required rest period was not

11   provided or was not duty free. (Wage Orders, subd. 12; Lab. Code §226.7.)

12       56.    Plaintiff and other similarly situated employees often worked as non-exempt

13   employees for DEFENDANTS in shifts in excess of 3.5, hours at times in excess of 5 hours, and at

14   times in excess of 10 or 12 hours. At times within the four years preceding the filing of the complaint,

15   DEFENDANTS would not provide Plaintiff and other similarly situated employees with all legally

16   required or legally compliant meal or rest periods. At times within the four years preceding the filing

17   of the complaint, DEFENDANTS would pay the employees a meal period premium wage or rest

18   period premium wage when employees were not provided all legally compliant or legally required

19   meal or rest periods. However, during these times DEFENDANTS paid meal period or rest period

20   premiums, DEFENDANTS would often pay the premium at less than the employee's regular rate of

21   pay.

22       57.    This practice resulted in Plaintiff and all other similarly situated employees not

23   receiving all meal period or rest period premium wages to which they were entitled to compensate

24   them for workdays which DEFENDANTS did not provide them with legally compliant meal periods

25   or rest periods in compliance with California law. This practice violated Labor Code section 226.7

26   and Wage Orders, subd. 11, 12.

27       58.    Plaintiff, on behalf of herself and the Premium Regular Rate Class, seeks damages and

28   all other relief allowable including the portion of unpaid meal break or rest break premium wages

which was unpaid based on DEFENDANTS' failure to calculate the meal break or rest break premium wages.

### THIRD CAUSE OF ACTION

**FAILURE TO PROVIDE MINIMUM WAGE OR OVERTIME PAY FOR ALL HOURS WORKED IN VIOLATION OF LABOR CODE SECTIONS 510, 1194, 1198 AND THE WAGE ORDERS**

**(Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the Minimum Wage Class and Overtime Class)**

59.     Plaintiff hereby incorporates by reference all paragraphs above, as if fully set herein by reference.

60.     At all times relevant to this Complaint, Plaintiff and the members of the Minimum Wage Class and Overtime Class were non-exempt employees of DEFENDANTS in California and covered by California Labor Code sections 510, 1194, 1197, 1198 and the Wage Orders.

61.     In California, an employer is required to pay an employee for all "hours worked" which includes all time that an employee is under control of the employer and including all time that the employee is suffered and permitted to work whether or not the employee is required to work. This includes time an employee is required to be present at a certain location whether or not the employee is working, including meal times. (*Mendiola v. CPS Security Solutions, Inc.* (2015) 60 Cal.4th 833, 840-842, *Morillion vs. Royal Packing Co.* (2000) 22 Cal.4th 575, 582.) Labor Code sections 1194, 1197 and the Wage Orders require that an employer compensate employees for "hours worked" at least at a minimum wage rate of pay as established by the wage orders. Labor Code sections 510, 1194 and the Wage Orders require that an employer compensate employees for "hours worked" at a higher rate of pay when an employee works over a certain number of hours: 1.5 times the regular rate of pay for hours worked over 8 hours up to 12 hours in a workday, over 40 hours in a workweek, or up to 8 hours on a seventh day of work in a workweek or 2 times the regular rate of pay for hours worked over 12 hours in a workday.

62.     At times during the four years prior to the filing of the Complaint, DEFENDANTS used policies and procedures of requiring Plaintiff or other similarly situated employees to clock out

and then perform post-closing procedures off the clock which they were not provided wages. For example, at times during the four years prior to the filing of the Complaint, employees were required to wait for security procedures to be completed after clocking out before being able to leave the premises resulting in time after clocking out which they were under control of DEFENDANTS but were not provided wages. At times during the four years prior to the filing of the Complaint, some of this time which was not compensated with wages occurred during periods of time that Plaintiff and similarly situated non-exempt employees had already worked 8 hours in a workday or 40 hours in a workweek, entitling them to the increased overtime rate for those time period. As a result of these policies, Defendants failed to compensate these employees with wages at least at a minimum wage rate for all time worked and at an overtime rate when the employees had already worked 8 hours in a workday, 40 hours in a workweek, or hours on a seventh consecutive day of work in a workweek.

63.     DEFENDANTS' policies and procedures were applied to all non-exempt employees in California at times during the four years prior to the filing of the Complaint and resulted in non-exempt employees working time which was not compensated any wages in violation of Labor Code sections 510, 1194, 1197, and the Wage Orders.

64.     As a result of Defendants' unlawful conduct, Plaintiff and members of the Mimium Wage Class and Overtime Class have suffered damages in an amount subject to proof, to the extent that they were not paid minimum wage for all hours worked or overtime wages for all overtime hours worked.

65.     Pursuant to California Labor Code sections 510, 1194, and the Wage Orders, Plaintiff and the Minimum Wage Class and Overtime Class are entitled to recover unpaid wages at the applicable minimum wage rate plus liquidated damages, applicable overtime rate, interest thereon, and attorneys' fees and costs.

## FOURTH CAUSE OF ACTION

**FAILURE TO PROVIDE COMPLETE AND ACCURATE WAGE STATEMENTS IN VIOLATION OF LABOR CODE SECTION 226**

**(Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the Wage Statement Class)**

66.     Plaintiff incorporates by reference all paragraphs above as if fully alleged herein.

67.     At all relevant times, Plaintiff and the other members of the Wage Statement Class were non-exempt employees of DEFENDANTS and covered by Labor Code Section 226.

68.     Pursuant to Labor Code Section 226, subdivision (a), Plaintiff and the other members of the class were entitled to receive, semimonthly or at the time of each payment of wages, an itemized wage statement accurately stating the following:

> (1) gross wages earned, (2) total hours worked by the employee, except for any employee whose compensation is solely based on a salary and who is exempt from payment of overtime under subdivision (a) of Section 515 or any applicable order of the Industrial Welfare Commission, (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and his or her social security number, except that by January 1, 2008, only the last four digits of his or her social security number or an employee identification number other than a social security number may be shown on the itemized statement, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

69.     At times during the one year prior to the filing of the Complaint, DEFENDANTS failed to provide accurate and complete wage statements to Plaintiff and other non-exempt employees. At times during the one year prior to the filing of the Complaint, DEFENDANTS provided itemized wage statements which did not state or did not accurately state the employees' total hours worked or rates in effect during the pay period. In addition, during the one year prior to the filing of the Complaint, as a result of the aforementioned conduct (i.e., failure to properly calculate overtime wages, meal and rest period premium wages, and failure to pay wages for all hours worked) inaccurately stated: the gross wages earned, the total hours worked, the net wages earned, and the applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate.

70.     DEFENDANTS' failure to provide Plaintiff and members of the Wage Statement Class with accurate and complete wage statements was knowing and intentional. DEFENDANTS

knowingly and intentionally put in place practices which deprived employees of wages and resulted in DEFENDANTS' knowing and intentional providing of inaccurate wage statements.

71.     As a result of DEFENDANTS unlawful conduct, Plaintiff and members of the Class have suffered injury in that the wage statements inaccurately stated and/or failed to state the aforementioned items of information and Plaintiff and the members of the class could not promptly and easily determine from the wage statement alone an accurate statement of: the gross wages earned, the total hours worked, the net wages earned, and the applicable hourly rates in effect during the pay period and corresponding number of hours worked at each hourly rate.

72.     Pursuant to Labor Code Section 226(e), Plaintiff and members of the Wage Statement Class are entitled to recover actual damages or fifty dollars for the initial pay period in which a violation of Labor Code Section 226 occurred and one hundred dollars for each violation of Labor Code Section 226 in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars per employee.

73.     Pursuant to Labor Code Sections 226(e) and 226(g), Plaintiff and members of the Class are entitled to recover the full amount of penalties due under Labor Code Section 226(e), reasonable attorney fees, and costs of suit.

## **FIFTH CAUSE OF ACTION**

### **FAILURE TO TIMELY PAY UNPAID WAGES DUE AT TIME OF SEPARATION OF EMPLOYMENT IN VIOLATION OF LABOR CODE SECTIONS 201, 202, AND 203 (Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the Waiting Time Class)**

74.     Plaintiff incorporates all paragraphs above as if fully alleged herein.

75.     At all relevant times, Plaintiff and the other members of the Derivative Waiting Time Class and Standalone Waiting Time Class were non-exempt employees of DEFENDANTS in California and covered by Labor Code Sections 201 or 202. Plaintiff resigned on or about May 2018.

76.     Pursuant to Labor Code Sections 201 or 202, Plaintiff and members of Waiting Time Classes were entitled upon termination to timely payment of all wages earned and unpaid prior to termination. Discharged employees were entitled to payment of all wages earned and unpaid prior to

discharge immediately upon termination. Employees who resigned were entitled to payment of all wages earned and unpaid prior to resignation within 72 hours after giving notice of resignation or, if they gave 72 hours previous notice, they were entitled to payment of all wages earned and unpaid prior to resignation at the time of resignation.

77.    During the three years prior to the filing of the Complaint, DEFENDANTS failed to pay Plaintiff and the Waiting Time Class with all wages as alleged above during their employment and never paid these amounts after the employees separated employment from DEFENDANTS. The unpaid wages included the incorrectly calculated overtime pay, incorrectly calculated meal period or rest period premiums, and unpaid minimum wage and overtime wages for all hours worked, all as described in more detail above. DEFENDANTS failure to pay these amounts violated Labor Code sections 201 and 202.

78.    In addition, during the three years prior to the filing of the Complaint, DEFENDANTS also failed to timely pay employees their final wages following separation of employment. For example and not limited to this example, Plaintiff was terminated on or about May 23, 2018; however, DEFENDANTS did not provide Plaintiff with her pay for May 4, 2018 to May 17, 2018 until May 24, 2018. In addition, as another example not limited to this example, DEFENDANTS did not pay her bonus payment earned from approximately May 18, 2018 until May 23, 2018 until June 7, 2018.

79.    DEFENDANTS' failure to pay Plaintiff and members of the Waiting Time Class all unpaid wages prior to termination or within 72 hours of resignation in accordance with Labor Code Sections 201 or 202 was willful. DEFENDANTS had the ability to pay all wages earned by hourly workers prior to termination or within 72 hours of resignation in accordance with Labor Code Sections 201 or 202, but intentionally adopted policies or practices incompatible with the requirements of Labor Code Sections 201 or 202. DEFENDANTS' practices are described in further detail above. When DEFENDANTS failed to timely pay hourly workers all unpaid wages earned at the time of termination or within 72 hours of resignation, DEFENDANTS knew what they were doing and intended to do what they did.

80.    Pursuant to Labor Code Section 201 or 202, Plaintiff and members of the Waiting Time Class are entitled to all wages earned prior to termination that DEFENDANTS did not pay

them.

81.    Pursuant to Labor Code Section 203, Plaintiff and members of the Waiting Time Classes are entitled to continuation of their wages, from the day their earned and unpaid wages were due upon termination until paid, up to a maximum of 30 days.

82.    Pursuant to Labor Code Sections Plaintiff and members of the Waiting Time Class are entitled to recover the full amount of their unpaid wages, continuation wages under Section 203, and interest thereon.

## SIXTH CAUSE OF ACTION

### UNFAIR BUSINESS PRACTICES IN VIOLATION OF BUSINESS AND PROFESSIONS CODE SECTION 17200, *et seq.*

### (Against DEFENDANTS ZALE DELAWARE, INC. and DOES 1 to 50 by the California Class)

83.    Plaintiff incorporates all paragraphs above as if fully alleged herein.

84.    The unlawful conduct of Defendants alleged herein constitutes unfair competition within the meaning of Business and Professions Code Section 17200. This unfair conduct includes DEFENDANTS' use of policies and procedures which resulted in DEFENDANTS' failure to provide: payment of overtime at the legal rate of pay; payment of the legal rate of pay for meal break or rest break premium wages; minimum wage or applicable overtime wages for all hours worked; complete and accurate wage statements; and timely payment of final wages, all as described in more detail above. Due to DEFENDANTS' unfair and unlawful business practices in violation of the Labor Code, DEFENDANTS have gained a competitive advantage over other comparable companies doing business in the State of California that comply with their obligations to provide their employees with: payment of properly calculated overtime; payment of properly calculated meal or rest break wages; wages at the applicable rate for all hours worked; complete and accurate wage statements; and timely payment of final wages, all as described in more detail above.

85.    As a result of DEFENDANTS' unfair competition as alleged herein, Plaintiff and members of the California Class have suffered injury in fact and lost money or property, as described in more detail above.

86.    Pursuant to Business and Professions Code Section 17203, Plaintiff and members of the California Class are entitled to restitution of all unpaid wages (properly calculated overtime wages; properly calculated meal period and rest period wages; unpaid minimum wage and overtime for all hours worked) and other monies rightfully belonging to them that DEFENDANTS failed to pay them and wrongfully retained by means of their unlawful and unfair business practices.

## PRAYER FOR RELIEF

**WHEREFORE, PLAINTIFF, ON HER BEHALF AND ON BEHALF OF THOSE SIMILARLY-SITUATED, PRAYS AS FOLLOWS:**

### ON THE FIRST, SECOND, THIRD, FOURTH, FIFTH, AND SIXTH CAUSES OF ACTION:

1.    That the Court determine that this action may be maintained as a class action (for the entire California Class and/or any and all of the specified sub-classes) pursuant to Code of Civil Procedure section 382 and any other applicable law;

2.    That the named Plaintiff be designated as class representative for the California Class (and all sub-classes thereof);

3.    A declaratory judgment that the practices complained herein are unlawful.

### ON THE FIRST CAUSE OF ACTION:

1.    That the Defendants be found to have violated the overtime provisions of the Labor Code and the IWC Wages Orders as to the Plaintiff and the Overtime Regular Rate Class;

2.    For damages, according to proof, including unpaid wages during the relevant statute of limitations subject to any permissible tolling;

3.    For any and all legally applicable penalties during the relevant statute of limitations subject to any permissible tolling;

4.    For pre-judgment interest, including but not limited to that recoverable under California Labor Code section 1194, and post-judgment interest;

5.    For attorneys' fees and costs of suit, including but not limited to that recoverable under California Labor Code section 1194; and,

6.      For such and other further relief, in law and/or equity, as the Court deems just or appropriate.

**ON THE SECOND CAUSE OF ACTION:**

1.      That the Defendants be found to have violated the meal break and rest break wages provisions of the Labor Code and the IWC Wages Orders as to the Plaintiff and the Premium Regular Rate Class;

2.      For damages, according to proof, including unpaid wages during the relevant statute of limitations subject to any permissible tolling;

3.      For any and all legally applicable penalties during the relevant statute of limitations subject to any permissible tolling;

4.      For pre-judgment interest, including but not limited to that recoverable under California Labor Code section 218.6, and post-judgment interest; and

5.      For such and other further relief, in law and/or equity, as the Court deems just or appropriate.

**ON THE THIRD CAUSE OF ACTION:**

1.      That the Defendants be found to have violated the minimum wage provisions and overtime provisions of the Labor Code and the IWC Wages Orders as to the Plaintiff and the Minimum Wage Class and Overtime Wage Class;

2.      For damages, according to proof, including unpaid wages during the relevant statute of limitations subject to any permissible tolling;

3.      For any and all legally applicable penalties during the relevant statute of limitations subject to any permissible tolling;

4.      For liquidated damages pursuant to Labor Code section 1194.2;

5.      For pre-judgment interest, including but not limited to that recoverable under California Labor Code section 1194, and post-judgment interest;

6.      For attorneys' fees and costs of suit, including but not limited to that recoverable under California Labor Code section 1194; and,

7.      For such and other further relief, in law and/or equity, as the Court deems just or

appropriate.

## ON THE FOURTH CAUSE OF ACTION:

1.      That the Defendants be found to have violated the provisions of the Labor Code regarding proper itemized paystubs as to the Wage Statement Class;

2.      For damages and/or penalties, according to proof, including damages and/or statutory penalties under Labor Code section 226(e) and any other legally applicable damages or penalties incurred during the relevant statute of limitations subject to any permissible tolling;

3.      For pre-judgment interest and post-judgment interest;

4.      For attorneys' fees and costs of suit, including but not limited to that recoverable under California Labor Code section 226(e); and,

5.      For such and other further relief, in law and/or equity, as the Court deems just or appropriate.

## ON THE FIFTH CAUSE OF ACTION:

1.      That the Defendants be found to have violated the provisions of the Labor Code regarding payment of wages due upon resignation or termination as to the Waiting Time Class;

2.      For damages and/or penalties, according to proof, including damages and/or statutory penalties under Labor Code section 203 and any other legally applicable damages or penalties during the relevant statute of limitations subject to any permissible tolling;

3.      For pre-judgment interest, including under California Labor Code section 218.6, and post-judgment interest; and,

4.      For such and other further relief, in law and/or equity, as the Court deems just or appropriate.

## ON THE SIXTH CAUSE OF ACTION:

1.      That the Defendants be found to have violated Business and Professions Code section 17200 for the conduct alleged herein as to all Classes;

2.      A declaratory judgment that the practices complained herein are unlawful;

3.      For restitution to the full extent permitted by law; and,

4.      For such and other further relief, in law and/or equity, as the Court deems just or

appropriate.

Dated: July 5, 2019                                  Respectfully submitted,
                                                     **LAVI & EBRAHIMIAN, LLP**

                                                     By: _____
                                                         Joseph Lavi, Esq.
                                                         Jordan D. Bello, Esq.
                                                         Vincent Granberry, Esq.
                                                         Attorneys for PLAINTIFF
                                                         CAROLINA LEOS and Other Class Members

## <u>DEMAND FOR JURY TRIAL</u>

PLAINTIFF CAROLINA LEOS demands a trial by jury for herself and the Class on all claims so triable.

Dated: July 5, 2019                                  Respectfully submitted,
                                                     **LAVI & EBRAHIMIAN, LLP**

                                                     By: _____
                                                         Joseph Lavi, Esq.
                                                         Jordan D. Bello, Esq.
                                                         Vincent Granberry, Esq.
                                                         Attorneys for PLAINTIFF
                                                         CAROLINA LEOS and Other Class Members